John A. PACE

v.

Donald VAUGHN, et al.

No. CIV.A. 99–6568.

United States District Court,
E.D. Pennsylvania.

June 7, 2001.

John A. Pace, Graterford, PA, Pro se.

Thomas W. Dolgenos, District Attorney's Office, Donna G. Zucker, John W. Goldsborough, Office of the District Attorney, Assistant District Attorney, Philadelphia, PA, for Respondents.

### *Memorandum*

GILES, Chief Judge.

### Factual and Procedural History

**I. Petitioner's Requests for Collateral Relief.**

On February 13, 1986, Petitioner pled guilty before the Honorable David N. Savitt of the Court of Common Pleas of Philadelphia County to the charges of possession of an instrument of crime and the second-degree murder of Randolph Baldwin. Judge Savitt sentenced Petitioner, who was then seventeen years old, to life imprisonment without the possibility of parole. Petitioner did not file a motion to withdraw his guilty plea, and he did not file a direct appeal.

However, six months later on August 21, 1986, Petitioner filed a *pro se* petition under the Pennsylvania Post Conviction Hearing Act ["PCHA"], 42 Pa.C.S.A § 9541, *et seq.* Through appointed counsel, Petitioner eventually filed an amended petition claiming both ineffective assistance of trial counsel and trial court error. The Commonwealth moved to dismiss the amended PCHA petition. The PCHA court granted that motion on July 23, 1991. On March 30, 1992, the Superior Court affirmed the PCHA court's decision. The Supreme Court of Pennsylvania denied Allocatur on September 2, 1992.

On November 27, 1996, Petitioner filed a second request for collateral relief under the Pennsylvania Post Conviction Relief Act ["PCRA"], which replaced the PCHA in 1988. When Petitioner filed the PCRA petition, the Act had recently been amended. The amendments, which were enacted on January 16, 1996, placed new time limits on PCRA petitions. The relevant part of the limitation follows:

(b) Time for filing petition.—

(1) Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:

(i) the failure to raise the claim previously was the result of interference by

government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S.A. § 9545.

## II. The Timeliness of the Petitioner's PCRA Petition was Uncertain Based on the Statutory Language and Legislative Note.

Section 9545 of the PCRA states that a petition must be filed within one year of the date that a petitioner's conviction became final, unless the petition falls within one of the enumerated exceptions. At the time Petitioner filed his PCRA petition in November 1996, his conviction had become final over ten years before, and his petition did not claim any of the statutory exceptions to the one year time limit. Since Petitioner's conviction occurred prior to the enactment of the PCRA amendments, it could not have been clear how, if at all, the amendments would apply to the petition when it was filed in November, 1996. The 1995 PCRA amendments had been accompanied by a Note about legislative intent. It stated that "a petitioner whose judgment has become final on or before the effective date of this act shall be deemed to have filed a timely petition under 42 Pa.C.S. Ch. 95 Subch. B if the petitioner's first petition is filed within one year of the effective date of the act." The

Note did not clarify whether petitioners with pre–1996 final convictions, who filed second or successive petitions, but who were filing their first petition since the amendment, had one year after the enactment of the act to file a collateral relief petition.

## III. Opinions from Federal District Courts Reflected the Fact that the Timeliness of Petitioner's PCRA Petition was Uncertain when it was Filed.

When Petitioner filed his PCRA petition in November 1996, it was not then known how the Pennsylvania state courts would apply the above quoted provision. No Pennsylvania state court opinion had been rendered interpreting it. As of September 1997, the third circuit found that it was still not clear how Pennsylvania courts would interpret amendments to the PCRA. Specifically, in *Banks v. Horn*, the court noted that:

> While it is true that the text of the 1995 PCRA amendments supports these contentions [that the 1995 amendments bar a second collateral relief petition filed more than one year after a conviction], it is not clear that these amendments are dispositive. The Commonwealth does not refer us to a single case applying the PCRA as amended in 1995 to support its views. Furthermore, in [*Commonwealth v.*] *Szuchon*[, 534 Pa. 483, 633 A.2d 1098 (1993)] and [*Commonwealth v.*] *Beasley*[, 544 Pa. 554, 678 A.2d 773 (1996)] the Pennsylvania Supreme court addresses the merits of claims which seemingly were precluded by the PCRA provisions then in force.

126 F.3d at 214. *Banks* was a death penalty case, and the *Szuchon* and *Beasley* were both death penalty cases. Further, the *Banks* opinion notes that "the Pennsyl-

vania Supreme Court does not apply Pennsylvania procedural bar rules consistently in death penalty cases." 126 F.3d at 213. However, the *Banks* opinion explicitly extends its reasoning beyond death penalty cases. The opinion states:

> It is, of course, possible in death penalty cases (and other cases as well) that future experience will show that the Pennsylvania Supreme Court consistently and regularly applies the 1995 amendments to the PCRA and thereby creates a procedural bar sufficient to satisfy the standard of *Johnson v. Mississippi*[, 486 U.S. 578, 108 S.Ct. 1981, 100 L.Ed.2d 575 (1988)]. That time, however, has not yet been reached.

126 F.3d at 214 n. 3. (citation omitted).

Trial courts in this district also noted that the ambiguity of the 1995 PCRA amendments extended to non-capital cases. *See Hammock v. Vaughan*, 1998 WL 163194, at *6 (E.D.Pa. April 7, 1998) ("The possibility exists, therefore, that...the statute of limitations bar will be waived by Pennsylvania courts in some cases. There is thus a lack of certainty with respect to state application of this procedural bar.."); *Peterson v. Brennan*, 1998 WL 470139, at *6 (E.D.Pa. August 11, 1998) (same).

Eventually, Pennsylvania state courts did interpret the 1995 PCRA amendments and held that the 1995 amendments were jurisdictional and would be adhered to strictly. *See Commonwealth v. Banks*, 556 Pa. 1, 726 A.2d 374, 375–76 (1999). Further, the 1995 PCRA amendments prohibited all second collateral relief petitions filed more than one year after a conviction became final, regardless of if the first petition was filed prior to the enactment of the 1995 PCRA amendments. *See id.* A recent federal district court case noted that the ambiguity related to the force of the 1995 PCRA amendments has only recently

been remedied. *See Holman v. Gillis*, 58 F.Supp.2d 587, 594–96 (1999) ("In light of the mandate by the Pennsylvania Supreme Court...since December 1998, the court finds...that it can now be said with confidence that the Pennsylvania Supreme Court has consistently and regularly applied the 1995 amendments to the PCRA, namely, the one-year statute of limitations, as a procedural bar to all untimely PCRA petitions that do not qualify for any of the three exceptions.").

## IV. Court Proceedings.

Indeed, the uncertainty about the force of the 1995 PCRA amendments extended to Pennsylvania state courts. On June 23, 1997, for example, the PCRA court did not dismiss Petitioner's PCRA petition as time barred. Rather, it denied the petition on its merits. Petitioner appealed.

Seven months after the dismissal of Petitioner's petition, the Superior Court of Pennsylvania issued the first state appellate court decision interpreting the recent amendments to the PCRA. *See Commonwealth v. Alcorn*, 703 A.2d 1054, 1056 (Pa.Super.Ct.1997) ("Our research indicated no prior decisions interpreting this section [42 Pa.C.S. § 9545]; therefore its applicability to this case presents a question of first impression."). The Superior Court in *Alcorn* held that the 1995 amendments to the PCRA disallowed second or successive petitions filed more than one year after the underlying conviction became final, even if the conviction became final, and the first petition was filed, before the enactment of the 1996 amendments. *Alcorn*, 703 A.2d at 1056–57.

The Commonwealth then wrote a letter brief to the Superior Court concerning the pending appeal of Petitioner's PCRA petition. The brief argued that based on *Alcorn* the petition should be dismissed as time-barred. The Superior Court agreed

and, on December 4, 1998, dismissed the petition as time-barred. Petitioner requested re-argument of the case, stating for the first time in a motion that prison officials had wrongfully withheld legal documents, and that that conduct entitled him to an exception to the PCRA's new statute of limitations pursuant to 42 Pa.C.S.A. § 9545(b)(1)(i). The Superior Court denied his request for re-argument without stating reasons. Petitioner appealed to the Supreme Court of Pennsylvania. Allocatur was declined by the Supreme Court on July 29, 1999.

On December 27, 1999, petitioner filed the instant federal *habeas* petition *pro se*. His petition included claims, among others, that 1) neither his state trial court judge nor his attorney properly informed him that his original life sentence expressly precluded the possibility of parole, and 2) that his sentence was given pursuant to a Pennsylvania statute which was inconsistent with other Pennsylvania statutes, in violation of Due Process Clause of the U.S. Constitution. The petition was referred to United States Magistrate Judge M. Faith Angell for a report and recommendation.

Judge Angell recommended that the petition be dismissed as time-barred because the Antiterrorism and Effective Death Penalty Act ("AEDPA") includes a statute of limitations that requires that habeas petitions be filed within one year of the date that a petitioner's conviction becomes final. *See* 28 U.S.C. § 2244(d)(1). Judge Angell accurately noted that petitioners whose convictions became final before the enactment of AEDPA's statute of limitations on April 24, 1996 have until one year from the enactment of the habeas statute of limitations to file their petitions. *See Burns v. Morton*, 134 F.3d 109, 111 (3d Cir.1998). Under this reasoning, Petitioner had only until April 23, 1997 to file his federal habeas petition; his petition had

been filed two and a half years after this deadline. Section 2244(d)(2) of Title 28 states that a "properly filed" pending petition for state collateral relief tolls · the statute of limitations for federal habeas purposes. Judge Angell reasoned that Petitioner's state collateral relief petition was not "properly filed," and, thus, did not toll AEDPA's statute of limitations.

The third circuit has determined that a "properly filed" state collateral relief petition is "one submitted according to the state's procedural requirements, such as the rules governing time and place of filing." *Lovasz v. Vaughn*, 134 F.3d 146, 148 (3d Cir.1998). When Petitioner filed his state court petition, it was unclear as a matter of state law if his state . petition would be time-barred. Once the Pennsylvania state courts delineated the new time limits of the PCRA, a Pennsylvania Superior Court dismissed Petitioner's PCRA petition as time-barred. Judge Angell concluded that a petition ultimately dismissed as time-barred by a Pennsylvania appeals court was not "submitted according to the state's procedural requirements" and thus, was not "properly filed" for the purpose of tolling the federal habeas statute. Since Petitioner had no "properly filed" state petition pending since the enactment of AEDPA, Judge Angell recommended that Petitioner's federal habeas petition should be dismissed because it was filed well after the statute of limitations period for filing a federal habeas petition.

Petitioner filed an objection to the Magistrate Judge's report and recommendation claiming that his state court petition ·should have tolled AEDPA's statute of limitation either because his state court petition was "properly filed" or because this court should apply "equitable tolling" pursuant to the third circuit's opinion in *Miller v. New Jersey Department of Corrections*, 145 F.3d 616 (3d Cir.1998). The

United States responded to Petitioner's Objection. After review of the applicable case law, this court concludes that the petition was "properly filed" for purposes of tolling the federal habeas statute of limitations, and even if it was not properly filed, Petitioner was entitled to equitable tolling while his state court petition was pending.

## Discussion

**I. The PCRA Petition was Properly Filed and Tolled AEDPA's Statute of Limitations Because it Abided by all of Pennsylvania's Clear and Well Established Procedural Requirements.**

 AEDPA's statute of limitation is tolled while a "properly filed" post-collateral relief petition is pending in state court. Last term, the United States Supreme Court defined a "properly filed" petition as follows:

> An application is "filed," as that term is commonly understood, when it is delivered to, and accepted by, the appropriate court officer for placement into the official record. *See, e.g., United States v. Lombardo*, 241 U.S. 73, 76, 36 S.Ct. 508, 60 L.Ed. 897 (1916) ("A paper is filed when it is delivered to the proper official and by him received and filed"); Black's Law Dictionary 642 (7th ed.1999) (defining "file" as "[t]o deliver a legal document to the court clerk or record custodian for placement into the official record"). And an application is "properly filed" when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee. *See, e.g., Habteselassie v. Novak*, 209 F.3d 1208, 1210–1211 (10th Cir.2000); [*Bennett v. Artuz,*] 199 F.3d, [116] at 121 [(2nd Cir.1999)]

(case below); *Villegas v. Johnson*, 184 F.3d 467, 469–470 (5th Cir.1999); *Lovasz v. Vaughn*, 134 F.3d 146, 148 (3d Cir.1998).

*Artuz v. Bennett*, 531 U.S. 4, 121 S.Ct. 361, 363–64, 148 L.Ed.2d 213 (2000).

Previously, the third circuit had defined a "properly filed" PCRA petition as follows:

> We believe that "a properly filed application" is one submitted according to the state's procedural requirements, such as the rules governing the time and place of filing. A Pennsylvania PCRA petitioner, for example, must file a motion with the clerk of the court in which he was convicted and sentenced, Pa. R.Crim. P. 1501, generally within one year of the date the judgment becomes final, 42 Pa. Cons.Stat. Ann. § 9545(b)(1). If a petitioner complies with these procedural requirements, or other procedural requirements the state imposes, his petition, even a second or successive petition, is "a properly filed application" for purposes of § 2244(d)(2). While we recognize that the Pennsylvania Supreme Court has announced strict rules regarding the granting of second and subsequent PCRA petitions, *see Commonwealth v. Lawson*, 519 Pa. 504, 549 A.2d 107 (1988), Pennsylvania allows for the filing of second or subsequent PCRA petitions, *see* 42 Pa. Cons.Stat. Ann. § 9545(b)(1), and courts occasionally grant relief in such proceedings, *see e.g., Commonwealth v. Morales*, 549 Pa. 400, 701 A.2d 516 (1997).

*Lovasz v. Vaughn*, 134 F.3d 146, 148–149 (3d Cir.1998). Thus, it is now fair to conclude that a PCRA petition is properly filed in Pennsylvania for purposes of tolling AEDPA's statute of limitations when it is delivered and accepted in accordance with applicable Pennsylvania laws and

rules. Petitioner's PCRA petition was delivered and accepted in accordance with applicable Pennsylvania laws and rules. The PCRA court accepted Petitioner's application for filing and ruled on its merits. The fact that state law was subsequently established that resulted in the Superior Court of Pennsylvania dismissing the petition as time-barred does not alter this essential fact.

The United States Supreme Court has listed the types of requisite procedural requirements, among them timeliness, that warrant a state collateral relief petition being considered "properly filed." These include the forms used, the office to which the form is sent, and payment of the relevant filing fee. *See Artuz*, 121 S.Ct. at 364. Similarly, the third circuit has noted that, in addition to the timeliness of the petition, a PCRA petition must be filed with the same court in which the petitioner was sentenced in order to be properly filed. *See Lovasz*, 134 F.3d at 148. These examples show that the "properly filed" requirement is meant to disallow tolling only when state petitions fail to comply with clear and well established procedural requirements. *See Emerson v. Johnson*, 243 F.3d 931, 934 (5th Cir.2001) ("Although we might have read [the state statute] to prohibit Emerson's suggestion for reconsideration, given Texas case law, as well as the *Artuz* Court's broad reading of the phrase 'properly filed,' we must conclude Emerson 'properly filed' his suggestion for reconsideration."); *Hardy v. Secretary for the Dept. of Corrections*, 246 F.3d 1300, 1302 (11th Cir.2001) (suggesting "properly filed" under *Artuz* means "conform[ing] with Florida's basic procedural rules"). Therefore, Petitioner's PCRA petition was proper for federal habeas purposes given the state of the law at the time his petition was filed.

## II. Third Circuit Precedent Supports Defining a Properly Filed Petition as One that Comports with Clear and Well Established State Procedural Requirements.

 The third circuit's interpretation of the term "properly filed" in 28 U.S.C. § 2244(d)(2) requires that state collateral relief petitions that have complied with all clear and established state law procedural requirements toll AEDPA's statute of limitations.

In *Lovasz*, the third circuit stated:

We have yet to consider what constitutes "a properly filed application" to trigger the tolling mechanism of § 2244(d)(2). Principles of comity inform our decision. In our federal system, "the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights." *Coleman v. Thompson*, 501 U.S. 722, 731, 111 S.Ct. 2546, 2555, 115 L.Ed.2d 640 (1991). Such respect for the states has given rise to the well-established rule that a federal court should not find a state prisoner's claims procedurally barred from federal habeas review unless state law "clearly foreclose[s]" review of the claims. *Toulson v. Beyer*, 987 F.2d 984, 987 (3d Cir.1993); *see Banks v. Horn*, 126 F.3d 206, 211 (3d Cir.1997); *Doctor v. Walters*, 96 F.3d 675, 683 (3d Cir.1996). Moreover, in enacting AEDPA, of which § 2244(d) is a part, Congress intended to "reduce federal intrusion into state criminal proceedings." *Banks*, 126 F.3d at 213. Thus, if a state allows petitioners to file second or subsequent petitions for post-conviction relief, federal courts should not undermine the state's decision by refusing to toll the one-year period of limitation of § 2244(d)(1) where a second or subsequent petition is pending in the state court system. Nor should we dis-

courage petitioners from exhausting all their claims in state court, even by means of a second or subsequent petition for post-conviction relief where permissible under state law, before seeking habeas review in federal court.

*Lovasz,* 134 F.3d at 148.

Federal courts must give state courts the first opportunity to correct their alleged errors. Tolling AEDPA's statute of limitations whenever petitioners have complied with all the state courts' clear and established procedural rules squares with the requirement of allowing a state the first opportunity to correct alleged violations of federal rights. A petitioner will be discouraged from filing in state court if it is believed that there is a possibility that the opportunity to bring a federal habeas petition will be lost should the state court end up finding that the state petition is procedurally barred. *See Swartz v. Meyers,* 204 F.3d 417, 419 (3d Cir.2000); *Emerson,* 243 F.3d at 935.

The third circuit has held that "in the absence of a state court decision indicating that a habeas corpus petitioner is clearly precluded from relief, the district court should dismiss the claim for failure to exhaust even if it is not likely that the state court will consider petitioner's claim on the merits." *Banks v. Horn,* 126 F.3d 206, 211 (3d Cir.1997). *See also Lines v. Larkins,* 208 F.3d 153, 163 (3d Cir.2000) (noting petitions should be dismissed for failure to exhaust even it is "unlikely that further state process is available"); *Lambert v. Blackwell,* 134 F.3d 506, 517–18 (3d Cir. 1997). Thus, the third circuit requires that petitioners exhaust in state court whenever a petitioner is not clearly precluded from relief on state procedural grounds, even if it is very likely, though not certain, that the petition will be dismissed in state court on procedural grounds. It follows that when petitioners

file petitions in state court that are not clearly foreclosed by state procedural law, the petitions must be considered properly filed and toll AEDPA's statute of limitations. The third circuit took this position when it determined AEDPA's statute of limitation would toll while the time to file a state appeal of the denial of a PCRA petition was running, even if the petitioner did not file such an appeal. Specifically, the court stated that its decision to toll AEDPA during the time allowed for an appeal of a state court decision

finds support in the principle of state-remedy exhaustion. In *Mills v. Norris,* 187 F.3d 881 (8th Cir.1999), the Court of Appeals for the Eighth Circuit applied the principle of exhaustion to a somewhat similar factual scenario. Mills had filed a petition for post-conviction relief before the enactment of AEDPA. On August 15, 1996, the trial court denied his petition. Four days later Mills filed a notice of appeal with the Arkansas Supreme Court, but failed to file the record on appeal within the requisite ninety days as provided by Arkansas' procedural rules. The Arkansas Supreme Court took no action on the appeal. Then, on October 9, 1997, Mills filed a federal habeas petition. The issue before the Eighth Circuit was, in light of Mills' failure to perfect his appeal, on what date did his post-conviction relief motion cease "pending." See *id.* at 882, 884.

Mills argued that the period was tolled until the end of the 90 days to perfect his appeal. The State argued that the appeal was not pending because Mills failed to timely file the record on appeal as required by the appellate rules. After reviewing the principles of exhaustion and comity, the court concluded:

In this case, if Mills had filed his federal petition during the ninety days following the filing of his notice to appeal to the Supreme Court of Arkansas, the federal petition would surely have been dismissed for failure to exhaust state remedies, because there was still time to perfect his state appeal by filing the record with the Clerk of the Arkansas Supreme Court. That being so, we conclude the state postconviction appeal was "pending" for purposes of § 2244(d)(2) until at least November 17, 1996, the end of that ninety-day period. Thus, Mills timely filed his federal habeas petition on October 9, 1997.

*Id.* at 884.

We find these reasons convincing. If Swartz had attempted to seek federal habeas corpus relief while there was still time to seek allowance of appeal, the petition would automatically be dismissed for failure to exhaust state remedies.

*Swartz,* 204 F.3d at 422.

Similarly, the Petitioner is entitled to a tolling of AEDPA's statute of limitations since his state petition was filed at a time when a habeas petition, if filed in federal court, would have been dismissed. *See* Part IIIB, infra. Therefore, this court holds that Petitioner's state court petition tolled AEDPA's statute of limitations and that the federal habeas petition must now be considered on its merits.

## III. The Statute of Limitations Equitably Tolled While the PCRA Petition was Pending.

### A. *Equitable Tolling Is Allowed in Extraordinary Circumstance.*

■ Petitioner is also entitled to equitable tolling to the extent that he did not file his federal habeas petition timely. The third circuit has allowed exceptions to AEDPA's one year statute of limitations where strict adherence to the statute of limitations would be unfair. In *Miller v. New Jersey Department of Corrections,* 145 F.3d 616 (1998), the court stated that

For guidance of the district court, we observe that equitable tolling is proper only when the "principles of equity would make [the] rigid application [of a limitation period] unfair." Generally, this will occur when the petitioner has "in some extraordinary way . . . been prevented from asserting his or her rights." The petitioner must show that he or she "exercised reasonable diligence in investigating and bringing [the] claims." Mere excusable neglect is not sufficient.

145 F.3d at 618–619 (citations omitted) (brackets and ellipses in original). Here, Petitioner exercised reasonable diligence in bringing his claims and it would be unfair, and would rise to an extraordinary deprivation of rights, if under these circumstances he were barred by AEDPA's one year statute of limitations.

### B. *The Petitioner Would Not Have Been Able to File His Petition in Federal Court in 1996.*

The Petitioner would not have been allowed to file a petition in federal court within one year of when AEDPA was enacted because the federal courts in this district would have refused to hear his federal claims because he had failed to exhaust his remedies in state court. As of September 1997, the third circuit stated that it was still not clear how Pennsylvania courts would interpret amendments to the PCRA and that federal courts should not hear petitions that were not brought in state court simply because they would be thought to be excluded by the 1995 amendments to the PCRA. *See Banks,* 126 F.3d at 211–14. *See also Hammock v. Vaughan,* 1998 WL 163194, at *6 (April 7,

1998) ("There is thus a lack of certainty with respect to state application of [the 1995 PCRA amendments.] This lack of certainty requires dismissal of the petition."); *Peterson,* 1998 WL 470139, at *6 (August 11, 1998) (same). Only recently have the state courts interpreted the 1995 amendments to the PCRA conclusively enough that federal courts do not have to dismiss habeas petitions that seem to be barred by the text of the 1995 amendments. *See Lines v. Larkins,* 208 F.3d at 164 (3d Cir.2000) ("[I]t is now clear that the one year limitation applies to all PCRA petitions including a second petition, no matter when the first was filed."); *Holman v. Gillis,* 58 F.Supp.2d 587, 594–96 (E.D.Pa.1999).

*C. AEDPA's Statute of Limitations Is Tolled Due To Pendency of Petitioner's 1996 PCRA Petition.*

It would be patently unfair if the federal statute of limitations ran during the time in which Petitioner was not allowed to bring a federal petition. Accordingly, AEDPA's statute of limitations was equitably tolled while Petitioner's second PCRA petition was pending from November 27, 1996 to July 29, 1999.

Petitioner's sentence was life without the possibility of parole and was imposed when he was only seventeen years old. In applying equitable tolling in a capital case, the third circuit stated, "In a capital case such as this, the consequences of error are terminal, and we therefore pay particular attention to whether principles of 'equity would make rigid application of a limitation period unfair' and whether petitioner has 'exercised reasonable diligence in investigating and bringing [the] claims.'" *Fahy v. Horn,* 240 F.3d 239, 245 (3d Cir.

2001) (citing *Miller,* 145 F.3d at 618). The *Fahy* court went on to state, "We elect to exercise leniency under the facts of this capital case where there is no evidence of abuse of process." *Fahy,* 240 F.3d at 245. Similarly, this case calls for leniency since the consequence facing Petitioner, the certainty of spending age seventeen until his life ends in prison, is extremely grave.[1] Should the court not toll AEDPA's statute of limitations, then Petitioner will have to spend life in prison without being allowed federal review of his claims. *See Fahy,* 240 F.3d at 245. Accordingly, this court finds that extraordinary circumstances exist in this case and that AEDPA's one-year statute of limitations was equitably tolled while Petitioner's PCRA petition was pending.

**Conclusion**

This court finds that Petitioner was entitled to statutory tolling and equitable tolling while his PCRA petition was pending. Because Petitioner's conviction became final before the enactment of AEDPA, he had one year from April 24, 1996, excluding the period in which the statute equitably tolled, to file his federal habeas petition. *See Burns,* 134 F.3d at 111.

The federal statute of limitations ran from April 24, 1996 (the date of the enactment of AEDPA) to November 26, 1996 (the day before petitioner filed his PCRA petition) and from July 30, 1999 (the day after the Pennsylvania Supreme Court declined to review the Pennsylvania Superior Court denial of his PCRA petition) until late December, 1999 when Petitioner filed his federal habeas petition. Given the one year statute of limitations, Petitioner had until December 24, 1999 to file his federal

---

1. The Supreme Court has recognized the special gravity of life without the possibility of parole, noting that the sentence "is far more severe" than a life sentence and that only

"capital punishment...exceeds it." *Solem v. Helm,* 463 U.S. 277, 297, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983).

habeas petition. Petitioner dated his federal habeas petition December 22, 1999. The clerk of the court marked Petitioner's petition as filed on December 27, 1999. The prison mailbox rule states that the petition is deemed filed when a prisoner gives his petition to prison officials. *See Burns,* 134 F.3d at 113. Since the Commonwealth does not argue otherwise, this court assumes Petitioner gave his petition to prison officials by December 24, 1999 making his federal habeas petition timely filed.